## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| ROKU, INC., | ) | |
| Plaintiff, | ) | Civil Action No. 1:24-cv-13217-RGS |
| | ) | |
| v. | ) | – |
| | ) | |
| ACCESS ADVANCE LLC, DOLBY | ) | |
| LABORATORIES, INC. (Delaware), DOLBY | ) | |
| LABORATORIES, INC. (California), DOLBY | ) | |
| INTERNATIONAL AB, DOLBY | ) | |
| LABORATORIES LICENSING CORPORATION, | ) | |
| DOLBY VIDEO COMPRESSION, LLC F/K/A GE | ) | |
| VIDEO COMPRESSION, LLC, AND SUN | ) | |
| PATENT TRUST, | ) | |
| | ) | |
| Defendants. | ) | |

### PLAINTIFF ROKU, INC.'S COMPLAINT

Plaintiff Roku, Inc. ("Roku") hereby files its Complaint against Access Advance LLC

("Access Advance"), Dolby Laboratories, Inc. (a Delaware corporation) ("DLI DE"), Dolby

Laboratories, Inc. (a California corporation) ("DLI CA"), Dolby International AB ("DIAB"),

Dolby Laboratories Licensing Corporation ("DLLC"), Dolby Video Compression, LLC f/k/a GE

Video Compression, LLC ("DVC") (collectively with DLI DE, DLI CA, DIAB, and DLLC,

"Dolby"), and Sun Patent Trust ("SPT") (collectively, "Defendants"):

### INTRODUCTION

1.      This case arises from Defendants' assertion of certain patent rights, including those

claimed and disclosed in U.S. Patent Nos. 9,445,105 ("the '105 patent"); 9,014,494 ("the '494

patent"); 9,277,240 ("the '240 patent"); and 9,001,888 ("the '888 patent") (collectively, "the

Patents-in-Suit"), as well as Defendants' related unlawful scheme to extract excessive royalties by

refusing to offer Roku fair, reasonable, and non-discriminatory ("FRAND"[1]) licensing terms for patents that are essential to the ultra-high-definition video technology standard known as either H.265 or High Efficiency Video Coding ("HEVC Standard"). Roku has committed to and stands ready to pay a reasonable license fee under reasonable terms and conditions for the right to use the essential patents Defendants own and/or have rights to license on behalf of third parties. Despite Roku's willingness to take a license and pay royalties, Defendants demand duplicative, discriminatory, and excessive royalties, fees, and terms in violation of their contractual obligation to offer these patents on FRAND terms to all licensees.

2.     Defendants Dolby and SPT each own numerous patents that the Defendants claim are necessary to implement the HEVC Standard. Many industries (like video streaming) adopt universal standards to ensure that technology produced by one manufacturer will be compatible with technology produced by another. This way, for example, one can use any device (*e.g.*, TVs, streaming players) and/or software (*e.g.*, operating systems) to stream an ultra-high-definition TV show or movie, regardless of whether the device was manufactured by Roku, Apple, Amazon, Samsung, LG, Sony, or another manufacturer, and/or includes software such as Roku OS, Apple tvOS, Amazon Fire TV, Google's Android TV, or other software.

3.     During the process of creating a universal standard (like the HEVC Standard), it is common for standards-setting participants, including manufacturers, researchers, and other entities, to submit their technical contributions to the standards body that is responsible for defining the contours of the technical standard. As a result of this process, technology included in a standard is often claimed by multiple patents belonging to multiple owners. These patents are referred to

---

[1] Some standards bodies, courts, and commentators use the acronym "RAND" to refer to "reasonable and non-discriminatory" instead of "FRAND." These terms are interchangeable.

2

as standard-essential patents ("SEPs"). Owning SEPs can therefore be extremely lucrative because every implementer of the standard in the industry must use those SEPs—and thus potentially have to pay a license fee to all SEP owners—in order to meet the requirements of the applicable standard.

4.      This can lead to abuse, however, as an SEP owner could successfully advocate for its patented technology to be incorporated into an industry standard, only to deny implementers a license to the SEP(s) unless the implementers pay exorbitant royalties disproportionate to the value of the patented technology. This is because a SEP owner can potentially exclude the implementer from practicing the entire standard, even if the SEP owner's invention is directed to a small aspect of the standard.

5.      To prevent such exploitation of essential patents, SEP owners must usually agree, as a condition to having the technology recited in their patents incorporated into the relevant standard, to license their patents to any willing licensee on FRAND terms. FRAND terms create a balance by ensuring that SEP owners are fairly compensated but cannot exclude willing licensees from the market or demand excessive royalties.

6.      Dolby and SPT and/or the respective prior owners of their respective SEPs purportedly essential to the HEVC Standard ("HEVC SEPs") each made promises to license their HEVC SEPs on FRAND terms to any willing licensee as a condition for having their claimed inventions incorporated into the HEVC Standard. But as demonstrated by recent actions, these were empty promises. Rather than offer FRAND rates to Roku, these SEP owners have conspired to extract duplicative, discriminatory, and disproportionately high royalties and terms from Roku, which seeks to provide products that support the HEVC Standard.

3

7.     Dolby and SPT perpetuated this scheme by contributing their HEVC SEPs into the HEVC Advance pool, a patent pool which is administered by Access Advance as a "licensing agent." Upon information and belief, Access Advance is a limited liability company formed by Dolby and other founding members. Access Advance negotiates license agreements for the HEVC Advance pool on behalf of its licensors.

8.     In theory, a patent pool can provide benefits to both SEP licensors and implementers by consolidating the point of negotiations for both types of parties. But in practice, a patent pool can introduce inefficiencies into SEP licensing when the administrator of the patent pool and its licensor members conspire to seek non-FRAND terms.

9.     Neither Dolby, SPT, nor Access Advance have offered FRAND terms to Roku. To the contrary, Access Advance has a personal financial incentive to extract the highest royalties possible in negotiating patent licenses. Upon information and belief, Dolby and SPT have similar financial incentives. The reason is simple: the higher the royalties paid by a licensee to the HEVC Advance pool, the higher the fee collected by Access Advance as the pool administrator, its founders including Dolby, and its licensors including SPT.

10.     Roku has negotiated with Defendants, in some instances for years, in an attempt to obtain FRAND terms. Despite Roku's willingness and good faith, Defendants refuse to honor their FRAND obligations. For example, Roku is already licensed to nearly 60% of the patents in the HEVC Advance pool, which includes approximately 50% of the licensors participating in the pool, yet Access Advance refuses to make a commensurate adjustment to its proposed license rates. To the extent necessary, Roku is willing to pay for an interim license pending the resolution of its request for a declaration of the FRAND terms and rates for a license to the HEVC Advance patent pool, Dolby's patent portfolio, and SPT's patent portfolio.

11.     Access Advance states that its licensors "have [an] obligation, upon request by an implementer, to offer bilateral licenses on reasonable terms, and to negotiate in good faith with the implementer."[2] ███████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████

████████████████████████████ SPT has likewise (1) not made a FRAND-compliant bilateral license offer to Roku to date or indeed any bilateral license offer at all, (2) stated that it has never executed a bilateral license to its HEVC SEP portfolio, and (3) redirected Roku to Access Advance for licensing terms instead of engaging in good-faith, bilateral negotiations.

12.     To make matters worse, Dolby and SPT commenced litigation against Roku in the Munich Local Division of the Unified Patent Court (the "German UPC proceedings"), alleging infringement of various European patents in the HEVC Advance pool and seeking injunctions aimed at preventing Roku from selling products supporting the HEVC Standard. On information and belief, such lawsuits were commenced as an effort by Defendants, individually and collectively, to gain leverage and coerce Roku to accept unfair, unreasonable, and discriminatory licensing terms for SEPs around the world, including in the United States.

13.     On information and belief, Defendants are engaged in a concerted effort to coerce Roku to pay duplicative, discriminatory, and excessive royalties. Indeed, Defendants' actions demonstrate that they have conspired to avoid their FRAND obligations. Without warning and while █████████████████████████████████████████, Dolby initiated its

---

[2] https://web.archive.org/web/20241126181436/https://accessadvance.com/hevc-advance-patent-pool-key-licensor-terms/

German UPC proceeding. SPT—an Access Advance licensor that had never engaged Roku in licensing negotiations—followed with its own two UPC suits shortly thereafter. On information and belief, SPT filed suit at Dolby's and Access Advance's behest in order to coerce Roku into accepting a supra-FRAND pool license.

14. Access Advance and Dolby's motives are transparent: if they can coerce Roku to accept Access Advance's unfair, unreasonable, and discriminatory licensing terms, they will make more money. Access Advance earns more from more royalties, and upon information and belief, Dolby presumably earns more from a disproportionate share of Access Advance's royalty. This is an opportunistic shakedown designed to enrich Access Advance and Dolby in disregard of clear FRAND obligations of those licensors.

15. Accordingly, Roku seeks this Court's intervention, and requests, as further set forth below, (1) declaratory judgments that it does not infringe certain Dolby and SPT patents identified herein; (2) declaratory judgments that certain Dolby and SPT patents identified herein are unenforceable due to the failure of Dolby and SPT, and the respective prior owners of Dolby's and SPT's HEVC SEPs, to disclose each of their respective intellectual property rights to the standard-setting organization that developed the HEVC standard, (3) declaratory and injunctive relief requiring Dolby and SPT to abide by their contractual obligations to license SEPs on FRAND terms; (4) a determination of the FRAND terms and rates for a license to Dolby's and SPT's HEVC SEPs and to the HEVC Advance pool, and (5) to the extent necessary, a declaration of the terms of an interim license.

## PARTIES

16. Plaintiff Roku is a Delaware corporation with its principal place of business at 1173 Coleman Avenue San Jose, CA 95110.

6

17. On information and belief, Defendant Access Advance LLC is a Delaware limited liability company with a principal place of business at 100 Cambridge Street, Suite 21400, Boston, MA 02114. Access Advance was formerly named HEVC Advance LLC.

18. On information and belief, Defendant DLI DE is a Delaware Corporation with its principal place of business located at 1275 Market Street, San Francisco, CA 94103.

19. On information and belief, Defendant DLI CA is a California Corporation with its principal place of business located at 1275 Market Street, San Francisco, CA 94103. On information and belief, DLI CA is a wholly owned subsidiary of DLI DE.

20. On information and belief, Defendant DIAB is a Swedish private limited company with its principal place of business at 77 Sir John Rogerson's Quay, Spaces South Docklands, Dublin D02 VK60, Ireland. On information and belief, DIAB is a wholly owned subsidiary of Dolby International Holding BV, a Dutch private limited liability company, which is a wholly owned subsidiary of DLI CA, which is a wholly owned subsidiary of DLI DE.

21. On information and belief, Defendant DLLC is a New York Corporation with its principal place of business located at 1275 Market Street, San Francisco, CA 94103. On information and belief, DLLC is a wholly owned subsidiary of DLI CA, which is a wholly owned subsidiary of DLI DE.

22. On information and belief, Defendant DVC is a Delaware limited liability company with its principal place of business located at 1 Research Circle, Niskayuna, NY, 12309. On information and belief, DVC, formerly known as GE Video Compression, LLC, is a wholly owned subsidiary of DLI DE, acquired from GE Licensing.

23. On information and belief, Defendant SPT is a Delaware statutory trust with its principal place of business located at 437 Madison Avenue, New York, NY 10022.

24. On information and belief, DLI DE, directly or indirectly, owns more than 10% of Access Advance.

25. On information and belief, at least one of DLI DE, DLI CA, DIAB, and DLLC, is a founding member, or successor-in-interest of a founding member of Access Advance's HEVC Advance pool.

26. On information and belief, DVC is a founding member, or successor-in-interest of a founding member of Access Advance's HEVC Advance pool.

27. Each of DIAB, DLLC, and DVC is a licensor member of Access Advance's HEVC Advance pool.[3]

28. SPT is a licensor member of Access Advance's HEVC Advance pool.

## JURISDICTION AND VENUE

29. This action arises under the patent laws of the United States, 35 U.S.C. § 1 *et seq.*, and the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202.

30. This Court has subject matter jurisdiction based upon at least 28 U.S.C. §§ 1331 and 1338(a), as well as supplemental jurisdiction under 28 U.S.C. § 1367(a). Roku is seeking declarations of non-infringement and unenforceability, which necessarily present a question of federal patent law. *Medtronic, Inc. v. Mirowski Fam. Ventures, LLC*, 571 U.S. 191 (2014). Moreover, the additional causes of action pleaded herein against Defendants are so related to Defendant's assertion of patent rights and claims that Roku requires a license such that they share a common nucleus of operative fact and form part of the same case or controversy warranting the exercise of supplemental jurisdiction. Additionally, Access Advance and Dolby have argued, in a

---

[3] *See* https://web.archive.org/web/20241126201241/https://accessadvance.com/hevc-advance-patent-pool-licensors/

8

motion to remove a case having similar claims from Massachusetts state court to this federal court, that the "federal courts have original jurisdiction 28 U.S.C. § 1331, § 1338, and § 2201" over claims dependent on addressing whether FRAND patent licensing terms have been offered and seeking a declaration of such terms. *See* Notice of Removal at 3-5, *HP, Inc. v. Access Advance LLC et al.*, No. 1:24-cv-12186 (D. Mass. Aug. 23, 2024, ECF No. 1). More specifically, Access Advance and those Dolby entities argued that "Federal question jurisdiction exists over [such] claims" because patent infringement claims constitute "the underlying coercive action that the declaratory judgment defendant could have brought" and such patent infringement claims "would necessarily present a federal question," specifically. *Id.*

31.     This Court has general personal jurisdiction over Access Advance at least because Access Advance has its principal place of business in Massachusetts. This Court also has specific personal jurisdiction over Access Advance at least because Access Advance has purposefully availed itself of the privilege of conducting business in Massachusetts and Roku's claims arise from Access Advance's transacting business within Massachusetts.

32.     Upon information and belief, this Court has specific personal jurisdiction over DLI DE at least because DLI DE has purposefully availed itself of the privilege of conducting business in Massachusetts and Roku's claims arise from DLI DE's transacting business within Massachusetts. Upon information and belief, DLI DE created and/or delegated licensing authority of DIAB's and DLLC's HEVC SEPs that are owned indirectly by DLI DE, to Massachusetts-based Access Advance based on communications that were directed to Access Advance in Massachusetts. Upon information and belief, DLI DE obtained direct or indirect ownership of Access Advance based on communications that were directed to Access Advance in

Massachusetts. Roku's claims arise from DLI DE's transacting business in Massachusetts with respect to the SEPs that are at issue in this dispute.

33. Upon information and belief, this Court has specific personal jurisdiction over DLI CA at least because DLI CA has purposefully availed itself of the privilege of conducting business in Massachusetts and Roku's claims arise from DLI CA's transacting business within Massachusetts. Upon information and belief, DLI CA created and/or delegated licensing authority of DIAB's and DLLC's HEVC SEPs that are owned indirectly by DLI CA, to Massachusetts-based Access Advance based on communications that were directed to Access Advance in Massachusetts. Upon information and belief, DLI CA obtained direct or indirect ownership of Access Advance based on communications that were directed to Access Advance in Massachusetts. Roku's claims arise from DLI CA's transacting business in Massachusetts with respect to the SEPs that are at issue in this dispute.

34. Upon information and belief, this Court has specific personal jurisdiction over DIAB at least because DIAB has purposefully availed itself of the privilege of conducting business in Massachusetts and Roku's claims arise from DIAB's transacting business within Massachusetts. Upon information and belief, DIAB created and/or delegated licensing authority of DIAB's HEVC SEPs that are owned by DIAB, to Massachusetts-based Access Advance based on communications that were directed to Access Advance in Massachusetts. Roku's claims arise from DIAB's transacting business in Massachusetts with respect to the SEPs that are at issue in this dispute.

35. Upon information and belief, this Court has specific personal jurisdiction over DLLC at least because DLLC has purposefully availed itself of the privilege of conducting business in Massachusetts and Roku's claims arise from DLLC's transacting business within Massachusetts. Upon information and belief, DLLC delegated licensing authority of DLLC's

HEVC SEPs that are owned by DLLC, to Massachusetts-based Access Advance based on communications that were directed to Access Advance in Massachusetts. Roku's claims arise from DLLC's transacting business in Massachusetts with respect to the SEPs that are at issue in this dispute.

36.     Upon information and belief, this Court has specific personal jurisdiction over DVC at least because DVC has purposefully availed itself of the privilege of conducting business in Massachusetts and Roku's claims arise from DVC's transacting business within Massachusetts. Upon information and belief, DVC, or its predecessor-in-interest, GE Video Compression, LLC, created and/or delegated licensing authority of Dolby's HEVC SEPs that are owned by DVC, to Massachusetts-based Access Advance based on communications that were directed to Access Advance in Massachusetts. Roku's claims arise from DVC's transacting business in Massachusetts with respect to the SEPs that are at issue in this dispute.

37.     Upon information and belief, this Court has specific personal jurisdiction over SPT at least because SPT has purposefully availed itself of the privilege of conducting business in Massachusetts and Roku's claims arise from SPT's transacting business within Massachusetts. Upon information and belief, SPT delegated licensing authority of SPT's HEVC SEPs that are owned by SPT, to Access Advance based on communications that were directed to Access Advance in Massachusetts. Roku's claims arise from SPT's transacting business in Massachusetts, and SPT created and/or delegated licensing authority to Massachusetts-based Access Advance with respect to the SEPs that are at issue in this dispute.

38.     Venue is proper in this District under 28 U.S.C. § 1391 at least because a substantial portion of the events giving rise to Roku's claims occurred in this judicial District and because

Access Advance resides in this judicial District. Access Advance has its principal place of business in the State of Massachusetts.

## FACTUAL BACKGROUND

39. Roku is a leading technology company that aims to drive innovation and meaningful progress through, among other things, its video streaming technology. Securing licensing for SEPs is critical to this goal. As such, Roku negotiates with prospective licensors in good faith as a willing licensee and has negotiated in good faith with Access Advance and the other Defendants.

40. As discussed in further detail below, Access Advance, Dolby and SPT have asserted that Roku must take a license to certain HEVC SEPs that allegedly cover certain of Roku's products. Access Advance, Dolby and SPT allege that without such licenses, Roku does not have freedom to operate.

### The Patents-In-Suit

41. The '105 patent states on its face that it was issued on September 13, 2016, to named inventors Toshiyasu Sugio, Takahiro Nishi, Youji Shibahara, and Hisao Sasai. Public assignment records indicate that the '105 patent was assigned to Panasonic Intellectual Property Corporation of America and subsequently to SPT. On information and belief, SPT is the owner by assignment of the '105 patent. A true and correct copy of the '105 patent is attached hereto as Ex. 1.

42. The '494 patent states on its face that it was issued on April 21, 2015, to named inventors Semih Esenlik, Matthias Narroschke, and Thomas Wedi. Public assignment records indicate that the '494 patent was initially assigned to Panasonic Corporation, followed by Panasonic Intellectual Property Corporation of America, and subsequently SPT. On information and belief, SPT is the owner by assignment of the '494 patent. A true and correct copy of the '494 patent is attached hereto as Ex. 2.

43.     The '240 patent states on its face that it was issued on March 6, 2016, to named inventors Felix Henry and Gordon Claire. Public assignment records indicate that the '240 patent was initially assigned to Orange SA followed by DIAB. On information and belief, DIAB is the owner by assignment of the '240 patent. A true and correct copy of the '240 patent is attached hereto as Ex. 3.

44.     The '888 patent states on its face that it was issued on April 7, 2015, to named inventors Felix Henry and Gordon Claire. Public assignment records indicate that the '888 patent was initially assigned to Orange SA followed by DIAB. On information and belief, DIAB is the owner by assignment of the '888 patent. A true and correct copy of the '888 patent is attached hereto as Ex. 4.

### The Role of Standard-Essential Patents and Standard-Setting Organizations

45.     SEPs are patents that cover implementation of a technical standard issued by a standard-setting organization ("SSO") for a particular industry.

46.     Because technology claimed by SEPs are necessary to practice portions of the applicable technical standard, SEP owners could potentially exclude implementers like Roku from practicing a standard by refusing to grant them a license, or SEP owners could demand excessive royalties not tied to the actual value of the invention. To prevent such abuse, SSOs typically adopt policies that require that the SEP owner make a contractual commitment to license its SEPs to any implementer on FRAND terms, as a condition of the SEP owner's participation in the creation of the standard and as a prerequisite to the SEP owner's claimed technology being considered for inclusion in a technical standard.

47.     For video compression, the relevant SSO is the International Telecommunication Union–Telecommunication Standardization Sector ("ITU-T"). This Swiss organization oversees

the development of international standards related to numerous information and communication technologies, including the HEVC Standard for video compression. In particular, the Joint Collaborative Team on Video Coding ("JCT-VC"), formed in part by the ITU-T, undertook the development and maintenance of the HEVC standard.

48. Pursuant to a Common Patent Policy of the ITU-T and other SSOs ("ITU Patent Policy"), in order for a patent holder to have its patented technology included in one of ITU-T's technical standards, that patent holder must commit in writing to license the patent claiming that technology to third parties on FRAND or royalty-free terms.[4] The ITU Patent Policy makes clear that a contributor to the technical standard who does not commit to license its SEPs on FRAND or royalty-free terms may have its contribution excluded from the standard.

49. To have their patented technologies included in the HEVC Standard, Dolby and SPT, or the prior owners of their respective HEVC SEPs, each made such commitments to license their respective SEPs on FRAND terms. These promises are binding, irrevocable agreements between the SEP owners and the ITU-T and courts have consistently held that third parties seeking to license these SEPs (like Roku) are intended third-party beneficiaries of the contractual obligations between the SEP owners and the ITU-T and may demand SEP owners comply with their contractual duty to offer FRAND terms. *See, e.g., Microsoft Corp. v. Motorola, Inc.*, 854 F. Supp. 2d 993, 998-99 (W.D. Wash. 2012).

50. Roku is therefore entitled to enforce Dolby's and SPT's contractual obligations to license SEPs on FRAND terms and to stop Access Advance, as their agent and authorized licensing

---

[4] *See* Common Patent Policy for ITU-T/ITU-R/ISO/IEC at
https://web.archive.org/web/20110916195634/https://www.itu.int/en/ITU-T/ipr/Pages/policy.aspx

administrator of the patents, from reneging on the promises to license SEPs in the HEVC Advance pool on FRAND terms.

## Roku Licenses HEVC SEPs from MPEG LA

51.     In July 2015, Roku obtained a FRAND pool license from MPEG LA for a number of HEVC SEPs that is still presently in effect. Roku's license with the MPEG LA pool covered HEVC SEPs that later would be included in the HEVC Advance pool administered by Access Advance.

52.     After Roku entered into the MPEG LA license, numerous MPEG LA licensors left that pool and added their HEVC SEPs to the Access Advance HEVC Advance pool. Roku's license agreement with MPEG LA makes clear, however, that Roku retains all licenses and rights to all SEPs owned by licensors that were part of the MPEG LA licensing program at the time Roku executed its license, regardless of whether those licensors' SEPs are now in a different pool.[5] MPEG LA, through its then CEO, Larry Horn, represented to licensees of the MPEG LA HEVC patent portfolio, including Roku, that the departures of those licensors did not affect current

---

[5] *See*
https://web.archive.org/web/20200918144207/https://www.mpegla.com/programs/hevc/licensors/ ("For as long as they continue to be a Licensee, those Licensees who entered the HEVC Patent Portfolio License before a Licensor's termination are covered under all HEVC Essential Patents that the terminated Licensor and its Affiliates presently or in the future has the right to license or sublicense"); https://web.archive.org/web/20200923190342/https://www.mpegla.com/wp-content/uploads/hevc-att1.pdf ("For as long as they continue to be a Licensee, those Licensees with an HEVC Patent Portfolio License in effect prior to the date of termination retain their license under the respective patent and all HEVC Essential Patents that the Licensor and its Affiliates presently or in the future has the right to license or sublicense after the indicated termination date.");
https://web.archive.org/web/20201203042630/https://www.mpegla.com/programs/hevc/faq/ ("Each Licensor is under an obligation to grant to MPEG LA a worldwide, nonexclusive license under all HEVC Essential Patents that it and its Affiliates presently or in the future has the right to license or sublicense (without payment to any third party which is not an Affiliate), enabling MPEG LA to grant worldwide, nonexclusive sublicenses under terms of the HEVC Patent Portfolio License.").

licensees because "each Licensor agreed when they joined MPEG LA's pool that even if the Licensor subsequently terminates [its relationship with the MPEG LA pool], licensees who join the pool before their termination get coverage under all essential patents that the Licensor (and its Affiliates) presently or in the future has the right to license or sublicense."[6] *See* Ex. 5 (Email from MPEG LA to HEVC licensees dated July 23, 2019 re: HEVC License Advisory); Ex. 6 (Email from MPEG LA to HEVC licensees dated March 28, 2021 re: HEVC Double Coverage Advisory). Accordingly, on information and belief, Roku does not owe additional royalties to Access Advance for licensing patents currently in the HEVC Advance pool that were previously licensed to Roku under the MPEG LA agreement.

53.     As a result of the agreements with MPEG LA and other pool members, Roku is currently licensed to nearly 60% of the patents that are in Access Advance's HEVC Advance pool from about 50% of the HEVC Advance pool licensors. Roku has stated that it is willing to license (and remains willing to license), on FRAND-compliant terms, the remaining portion of the HEVC Advance pool that is not covered by Roku's prior licenses. Defendants' actions have precluded Roku from doing so. To the extent necessary, Roku is willing to pay for an interim license pending the resolution of its request for a declaration of the FRAND terms and rates for a license to the HEVC Advance patent pool, Dolby's patent portfolio, and SPT's patent portfolio.

54.     In May 2023, Via Licensing Corporation, which on information and belief was then a wholly owned subsidiary of Dolby, acquired MPEG LA (including MPEG LA's HEVC SEP licensing program), and formed Via Licensing Alliance LLC ("Via LA").[7] Via LA continues to

---

[6] *See*
https://web.archive.org/web/20200224212306/https://www.streamingmedia.com/Articles/ReadA rticle.aspx?ArticleID=136123

[7] *See* https://web.archive.org/web/20230515172825/https://www.via-la.com/via-licensing-and-mpeg-la/

represent on its website that "[f]or as long as they continue to be a Licensee, those Licensees who entered the HEVC Patent Portfolio License before a Licensor's termination are covered under all HEVC Essential Patents that the terminated Licensor and its Affiliates presently or in the future has the right to license or sublicense."[8]

### Dolby and other HEVC SEP Owners Form Access Advance

55.     In 2015, Dolby and other HEVC SEP owners grouped their patents for licensing purposes into the HEVC Advance pool. Upon information and belief, Dolby and other founding members formed Access Advance to act as the patent licensing agent for the HEVC Advance pool. In addition to demanding a royalty that is distributed among licensors of the patents in the pool, Access Advance is also demanding that licensees pay for alleged non-patent-related fees of at least 28.75%, which are in effect extra royalties for Defendants. Access Advance's fee is excessive and duplicative because it is significantly higher than MPEG LA's fee of 15%, and upon information and belief is assessed across its entire portfolio, including patents that are covered by Roku's MPEG LA license.

56.     Access Advance, Dolby, and other Access Advance licensors have engaged in a pattern and practice of asserting patent infringement suits against prospective licensees of HEVC SEPs and seeking injunctions to force such licensees to take a pool license to Access Advance's HEVC Advance pool of patents.

57.     For example, Dolby and other Access Advance licensors, including GE Video Compression, LLC (now DVC), have previously sued Vestel, TCL, and HP for patent infringement

---

[8] *See* https://web.archive.org/web/20240522134549/https://www.via-la.com/licensing-2/hevc/hevc-licensors/; *see also* https://web.archive.org/web/20240522140208/https://www.via-la.com/licensing-2/hevc/hevc-patent-list/ ("Licensors agree to include all HEVC Essential Patents that they and their Affiliates presently or in the future have the right to license or sublicense.")

in German courts or the Unified Patent Court (in German local divisions) and sought injunctions to preclude those implementers from selling devices in Europe. Dolby, and other Access Advance licensors have also sued TCL in Brazilian courts, seeking similar injunctions. In each of the multiple disputes against Vestel, TCL and HP, the prospective licensee settled before a licensing rate could be judicially determined by the court.

### Roku's Initial Negotiations with Access Advance

58. Access Advance initially reached out to Roku about a potential license to the HEVC Advance pool around January 2016. But Access Advance did not provide any specific information about its patent portfolio or proposed terms until October 2016, when Access Advance's outside counsel sent an excerpt of license rates from an Access Advance rate chart (including discounted and undiscounted rates) along with a list of HEVC SEPs in the HEVC Advance pool. Access Advance, however, did not provide any explanation as to which rates would apply to Roku's products.

59. In January 2018, Access Advance's German outside counsel contacted Roku's European division regarding Roku's alleged need for a license to patents in the HEVC Advance pool, including SEPs owned by Dolby, the Electronics and Telecommunications Research Institute ("ETRI"), HFI Innovation, Inc., Koninklijke Philips N.V., Mitsubishi Electric Corporation, Samsung Electronics Co., Ltd. ("Samsung"), and Warner Bros. Entertainment, Inc. But Roku already had a license to the SEPs owned by at least ETRI and Samsung via Roku's July 2015 MPEG LA license. Accordingly, on February 20, 2018, Roku's outside counsel confirmed to Access Advance that Roku is willing to engage in good faith negotiations to conclude a license to HEVC SEPS on FRAND terms, and indicated that Roku was considering its options, including bilateral licenses from the various Access Advance licensor members. The response also explicitly

requested that all future communications to Roku be directed to Roku's outside counsel. Roku and Access Advance exchanged further correspondence between January and April 2018.

60.    Two months later, in April 2018, Access Advance provided an updated list of Licensors. Roku's outside counsel responded to Access Advance that Roku wanted to pursue bilateral negotiations, rather than a pool license to the HEVC Advance pool. Roku already had licenses to the HEVC SEPs of nearly half of the licensors then participating in the HEVC Advance pool.[9]

61.    After almost two years, Access Advance followed up with Roku, and then contacted Roku's internal personnel directly, thereby ignoring Roku's request that it be contacted only via outside counsel. Then, on March 28, 2022, Access Advance again contacted Roku directly, ignoring Roku's request that it be contacted only via outside counsel, again asking Roku to engage in negotiations of a pool license, even though Roku previously expressed a preference for direct bilateral licenses. Access Advance also identified new licensors to the HEVC Advance pool, including SPT. Access Advance asserted that Roku's MPEG LA license did not cover those new licensors. Access Advance never contacted Roku's outside counsel as explicitly requested.

62.    In June 2023, Access Advance once again contacted Roku directly—without including Roku's outside counsel against Roku's prior request and again requesting that Roku enter into a pool license, even though Roku had already expressed that it preferred a bilateral license with individual patent holders.

---

[9] *See e.g.,* April 2018 Access Advance licensor list
(https://web.archive.org/web/20180712152006/http://www.hevcadvance.com/pdfnew/LicensorLi
st.pdf) *compared with* MPEG LA April 2018 list of licensors (*see*
https://web.archive.org/web/20180423200908/http://www.mpegla.com/main/programs/HEVC/P
ages/Licensors.aspx).

63.     At the end of July 2024 and after Dolby and SPT filed suit against Roku in the German UPC proceedings and sought to enjoin Roku from selling products in member states of the European Union in which the asserted European Patents are validated and in force, Access Advance once more contacted Roku directly, again excluding Roku's outside counsel from the discussions against Roku's prior request. During that communication, Access Advance referenced the patent infringement proceedings brought by its licensors and again requested that Roku enter into a pool license with Access Advance.

64.     In September 2024, Roku, through its outside counsel, responded to Access Advance and reiterated that Roku has been and remains willing to engage in good faith negotiations for a license to HEVC SEPs on FRAND terms. Because Roku had learned from public information that Access Advance charges exceptionally high administrative fees of up to 40% (which are significantly higher than MPEG LA's fees), Roku requested information regarding the percentage of Access Advance's fees that were allocated to actual royalties as well as the portion of fees that were allocated to administrative or non-royalty fees.[10] Roku also requested an estimate of the percentage credit that Access Advance would provide for Roku's existing license under the MPEG LA agreement.

65.     Access Advance responded that it would provide an estimated pre-net offset of 28-30% of gross royalties to account for Roku's MPEG LA license, despite the fact that, as noted above, the MPEG LA license covers about 60% of the patents in Access Advance's portfolio from around 50% of Access Advance licensors. Access Advance responded that its fees comprised

---

[10] *See* (Ex. 7) Roku Letter to Access Advance dated September 5, 2024, *citing* post about Access Advance licensing policies
(https://web.archive.org/web/20220124064351/http://www.fosspatents.com/2022/01/access-advance-pool-doesnt-really.html).

28.75%, but did not explain whether it would apply a pre-net offset to gross royalties inclusive of its fees, or exclusive of its fees. A true and correct copy of that letter is attached as Ex. 8. To the extent necessary, Roku is willing to pay for an interim license pending the resolution of its request for a declaration of the FRAND terms and rates for a license to the HEVC Advance patent pool, Dolby's patent portfolio, and SPT's patent portfolio.

66. In December 2024, Roku requested that Access Advance explain how it computed the 28-30% discount for HEVC SEPs covered by the MPEG LA license, and the HEVC Advance fee of 28.75%, which was nearly double the MPEG LA fee. Roku also requested that Access Advance provide license agreements that it executed with Roku's competitors.

67. Roku has not yet been provided with Access Advance's license agreements to ascertain whether Access Advance's proposed terms to Roku are comparable to terms that Access Advance has granted to Roku's competitors.

████████████████████████ ████

68. In April 2018, after Roku had informed Access Advance that it was considering bilateral licenses, ████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████ A true and correct copy of that letter is attached as Ex. 9.

69. In June 2018, ████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

██████████████████████████████████████████ A true and correct

copy of that email is attached as Ex. 10.

70. ████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████ ███████████████████████████

████████████████████████████████████████████████████████████████████

████████████

71. ████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████

72. ████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████

73. ████████████████████████████████████████████████████

74. ████████████████████████████████████████████████████████████

████████████████████████████████████████

75.

76.     In February 2021,

77.

78.

79.	In September 2021, Roku ████████████████████████████████

---

[12] A per-patent basis refers to a metric determined by dividing a portfolio rate by the number of patents covered by the portfolio. For example, a per-patent basis for ████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████      ██████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████

81.     Between January 2023 and February 2023, Roku ██████████████████

████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████ In

February 2023, ████████████████████████████████████████████

██████████████████████

82.     ████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████

83.     In the same August 2023 communication, ████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

84. █████████████████████████████████████

85. █████████████████████████████████████

Notably, a copy of an exclusive license agreement between Dolby and ETRI that was publicly recorded within the U.S. Patent Office's assignment database reserved a "Retained Right to License" for ETRI without expressly conveying a right for Dolby to enforce such patents. *See* Ex. 11. As such, the terms of the license agreement between Dolby and ETRI raise questions regarding Dolby's ability to enforce and collect royalties from third parties on patents covered by the Dolby-ETRI agreement. ████████████████

86. In March 2024, ███████████████████████

87. In May 2024, ██████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████████

██████

88. Once again, ████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████ ██ ████████

████████████████████████████████████████████████████

89. From April to May 2024, ████████████████████████████████████████████████

**Dolby and SPT Sue Roku in the German UPC Proceedings**
**After Failing to Offer FRAND Terms**

90. In June 2024, while Roku was ████████████████████████████████████████████

████████████████████████████████████████████, Dolby through DIAB, unexpectedly

served Roku with a complaint filed at the Unified Patent Court alleging infringement of European

Patent No. 3,490,258 ("the EP'258 patent"), a patent that is part of the HEVC Advance pool.

91. Shortly thereafter, in July 2024, SPT served Roku with two complaints filed at the

Unified Patent Court alleging patent infringement of European Patent No. 3,200,463 ("the EP'463

patent") and European Patent No. 2,903,267 ("the EP'267 patent"), both of which are part of the

HEVC Advance pool. Critically, SPT never contacted Roku regarding its alleged HEVC SEPs

before filing suit and seeking injunctive relief.

27

92. The Defendants' conduct leading to the UPC proceedings makes clear that these proceedings are an attempt to coerce Roku, through the expense of patent litigation and the threat of injunctions, to enter into a license agreement to the HEVC Advance pool on supra-FRAND terms.

93. Since those German UPC proceedings began, ███████████████████████ ████████████████████████████████████████████████ Dolby's conduct continues to violate its obligations to the ITU standard-setting organization to grant licenses to its HEVC SEPs on FRAND terms. SPT has also sought supra-FRAND rates for its portfolio of HEVC SEPs. SPT's conduct continues to violate its obligations to the ITU standard-setting organization to grant licenses to its HEVC SEPs on FRAND terms. These obligations inured to SPT from Panasonic, the prior owner of SPT's HEVC SEPs. In these ways, Dolby and SPT have aligned with Access Advance to force Roku into a license with supra-FRAND terms.

███████████████████

**During the Pendency of the Dolby German UPC Proceeding**

94. In August 2024, ████████████████████████████ ████████████████████████████████████████████████ ███████████████████████████████

95. Public sources indicate that Dolby completed its acquisition of GE Licensing around August 2024.[13] GE Video Compression, LLC has been renamed DVC.[14]

96. Given ███████████████████████ and assertion of patent infringement of HEVC SEPs from portfolios owned by DIAB and DLLC against implementers,

---

[13] *See* https://web.archive.org/web/20240820043411/https://www.investing.com/news/company-news/dolby-acquires-ge-licensing-for-429-million-93CH-3578289

[14] *See* https://web.archive.org/web/20240925105445/https://accessadvance.com/hevc-advance-patent-pool-licensors/

Dolby is likely to license and assert patent infringement of HEVC SEPs from the portfolio owned by DVC. Given ████████████████████████████████████████████████████████ ███████████████████, Dolby is also likely to demand non-FRAND rates for the HEVC SEPs in its portfolios owned by DVC.

97. On November 14, 2024, ████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████ ████████████████████████████████.

### Roku's Negotiations with SPT
### During the Pendency of the SPT German UPC Proceedings

98. Roku contacted SPT in August 2024 to state its willingness to engage in good faith negotiations for a bilateral license to SPT's HEVC SEPs on FRAND terms. Roku did so even though SPT served Roku with complaints for patent infringement in the UPC seeking an injunction, without first engaging with Roku.

99. Roku requested that SPT provide a FRAND-compliant license offer to its portfolio. But SPT provided neither a license agreement nor any bilateral rates of its own. SPT responded that it had not granted bilateral licenses to its HEVC SEPs and that SPT's HEVC SEPs had been licensed through the Access Advance HEVC Advance pool and the Velos Media licensing program. SPT largely deferred to Access Advance for licensing terms. SPT referred to its share of Access Advance's royalties and requested that Roku pay double the Access Advance rates for a bilateral license, without providing any reasoned basis for such a significant increase over the pool rate for a bilateral license. It also appeared that SPT did not conduct a reasonable investigation of Roku's products before filing suit at the UPC because SPT alleged in post-suit licensing discussions that SPT did not have sufficient familiarity with Roku's products in order to provide licensing rates.

100. On November 15, 2024, ███████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████

**Defendants' Allegations that Roku Requires a License to the Patents-In-Suit**

101. As explained in the preceding paragraphs, Roku and Dolby ████████████ ████████████████████████████████████ until Dolby served Roku with a complaint in the Unified Patent Court in June 2024 alleging the Roku HEVC Products infringed the EP'258 patent, which is the European counterpart of the '240 and '888 patents at issue in this proceeding. Dolby's complaint in the German UPC Proceeding alleges that Roku needs a license to Dolby's HEVC SEPs for the Roku HEVC Products. Dolby's HEVC SEPs include the '240 patent and the '888 patents.

102. One month later, SPT served Roku with complaints in the Unified Patent Court alleging the Roku HEVC Products infringed the EP'267 patent, which is the European counterpart of the '494 patent at issue in this proceeding, and the EP'463 patent, which is the European counterpart of the '105 patent at issue in this proceeding. SPT's complaints allege that Roku needs a license to SPT's HEVC SEPs, for the Roku HEVC Products. SPT's HEVC SEPs include the '494 and '105 patents.

103. Despite its efforts to reach business solutions with Dolby and SPT, Roku maintains that it does not infringe any claim of the Patents-In-Suit.

104. Accordingly, an actual and justiciable controversy exists between Roku and Dolby concerning whether Roku infringes one or more claims of the '240 patent or the '888 patent, and between Roku and SPT concerning whether Roku infringes one or more claims of the '105 patent or the '494 patent. Roku now seeks a declaratory judgment that Roku does not infringe claims of the Patents-in-Suit.

105.   As discussed above, the ITU Patent Policy states that in order for a patent holder to have its patented technology processed for inclusion in an ITU-T technical standard, such as HEVC, the patent holder must commit to license its patent claiming that technology to third parties on FRAND terms.  The ITU Patent Policy further states that a participant in the standard-setting process "should, from the outset, draw the attention of the Director of ITU-TSB … to any known patent or to any known pending patent application, either their own or of other organizations."[15] The "Guidelines for Implementation of the Common Patent Policy," which were in effect when Dolby, or the prior owners of Dolby's and SPT's HEVC SEPs participated in the HEVC Standard-setting process, states that the ITU Patent Policy's phrase "from the outset" indicates that information about such patent rights "should be disclosed as early as possible during the development of the Recommendation | Deliverable" and further states that such information "should be provided in good faith and on a best effort basis, but there is no requirement for patent searches."[16]

106.   The JCT-VC, the team created in part by the ITU-T to develop the HEVC standard, created a Terms of Reference document that described its working procedures.  The JCT-VC Terms of Reference makes clear that "ITU-T/ITU-R/ISO/IEC common patent policy shall apply" to its standard-setting process, and that any obligations set forth in the Terms of Reference are

---

[15] *See* Common Patent Policy for ITU-T/ITU-R/ISO/IEC, *supra* n.4

[16] *See* §3 Patent Disclosure, of "Guidelines for Implementation of the Common Patent Policy for ITU-T/ITU-R/ISO/IEC", available in 2007 at
https://web.archive.org/web/20090616233318/http://www.itu.int/dms_pub/itu-t/oth/04/04/T04040000010002PDFE.pdf; available in 2012 at
https://web.archive.org/web/20141218042726/http://www.itu.int/dms_pub/itu-t/oth/04/04/T04040000010003PDFE.pdf

"supplemental to, and does not replace, any existing obligations of parties to submit formal IPR declarations to ITU-T/ITU-R/ISO/IEC."[17] The ITU Patent Policy, its Guidance for Implementation, and the JCT-VC Terms of Reference collectively set forth a duty of a participant to timely disclose its patent rights to technology covered by the standard. The ITU Patent Policy sets forth the premise: "that a patent embodied fully or partly in a Recommendation | Deliverable must be accessible to everybody without undue constraints."[18]

107.    The Federal Circuit has already held that the ITU Patent Policy at issue here included a duty to disclose patents related to standards under development. In *Qualcomm v. Broadcom*, the Federal Circuit held that the ITU policy required participants "disclose patents [that might be reasonably necessary to practice a predecessor AVC/H.264 video coding standard] prior to final approval of [that] standard...." 548 F.3d 1004, 1014-15, 1018 (Fed. Cir. 2008). The Federal Circuit held that Qualcomm's breach of these duties resulted in implied waiver, rendering the asserted patents there unenforceable as to products implementing the AVC/H.264 standard. *Id.* at 1026.

108.    Here, Dolby and SPT (and their predecessors in interest) each breached their duties to disclose the Patents-in-Suit timely to the ITU, rendering those patents unenforceable. Despite their involvement in developing the HEVC Standard, and despite being bound by the ITU Patent Policy, Dolby, Orange SA (the prior owner of certain Dolby HEVC SEPs), and Panasonic Corporation and Panasonic Intellectual Property Corporation of America (collectively, "Panasonic") (the prior owners of certain SPT HEVC SEPs), repeatedly failed to disclose, during

---

[17] *See* 2010 "Terms of Reference of the Joint Collaborative Team on Video Coding Standard Development" at page 4, available at
https://web.archive.org/web/20100415040655/https://www.itu.int/dms_pub/itu-t/oth/46/01/T46010000010001PDFE.pdf

[18] *See* Common Patent Policy for ITU-T/ITU-R/ISO/IEC, *supra* n.4

development of the HEVC Standard, that they had rights in the Patents-in-Suit that Dolby and SPT have since claimed are essential to practice those Standards.

109.    Orange SA, the prior owner of certain Dolby HEVC SEPs at issue in this case, participated in the HEVC Standard-setting process by proposing sign bit hiding functionality in February 2012 in submission JCTVC-G271 by its representatives, including Gordon Clare and Félix Henry.[19] *See* Ex. 12. In submission JCTVC-G271, Orange SA stated that it "may have current or pending patent rights relating to the technology described in this contribution." Yet despite participating in the standard-setting process to promote and attempt to have its patent-covered technology incorporated into the HEVC standard,  Orange SA never identified or disclosed the EP'258 patent, the '240 patent, the '188 patent, or their family members to the ITU-T or the JCTVC. Upon information and belief, Dolby acquired the EP'258 patent, the '240 patent, the '188 patent, and their family members around 2014. In 2013, Dolby submitted to the ITU-T a "Patent Statement and Licensing Declaration" in which it agreed to license all of its HEVC SEPs on FRAND terms, , *see* Ex. 13, and executed another in 2014, *see* Ex. 14, but never disclosed either the '240 patent or '888 patent, or their family members including the EP'258 patent that Dolby has asserted in the UPC. Each of the '240 patent, '888 patent, and EP'258 patent names as inventors, Gordon Clare and Félix Henry, the same representatives who proposed Orange SA's sign bit hiding functionality for inclusion into the HEVC standard.

110.    Panasonic, the prior owner of certain SPT HEVC SEPs at issue in this case, participated in the HEVC Standard-setting process but never disclosed its intellectual property rights. Panasonic participated in the HEVC Standard-setting process by proposing syntax for

---

[19] *See* https://web.archive.org/web/20180726141726/http://phenix.int-evry.fr/jct/doc_end_user/current_meeting.php?id_meeting=150&search_id_group=1&search_sub_group=1 referring to "JCTVC-G271" as "Sign Data Hiding."

purportedly signaling dependent slices in an HEVC bitstream in October 2012 in submission JCTVC-K0184 by its representatives including Semih Esenlik, Matthias Narroschke, and Thomas Wedi.[20] *See* Ex. 15. In submission JCTVC-K0184, Panasonic stated that "it may have current or pending patent rights relating to the technology described in this contribution." Yet despite participating in the standard-setting process to promote and attempt to have its patent-covered technology incorporated into the HEVC standard, Panasonic never identified or disclosed the EP'267 patent, the '494 patent, or their family members to the ITU-T or the JCTVC. In 2015, Panasonic submitted to the ITU-T a "Patent Statement and Licensing Declaration" in which it agreed to license all of its HEVC SEPs on FRAND terms, *see* Ex. 16, but never disclosed the '494 patent, or their family members including the EP'267 patent that SPT has asserted in the UPC. Each of the '494 patent, and EP'267 patent names as inventors, Semih Esenlik, Matthias Narroschke, and Thomas Wedi, the same representatives who proposed Panasonic's dependent slice functionality for inclusion into the HEVC standard.

111. Panasonic participated in the HEVC Standard-setting process by proposing processes for deriving motion vectors in January 2011 in submissions JCTVC-D273 and JCTVC-D274 by its representatives including Toshiyasu Sugio and Takahiro Nishi.[21] *See* Exs. 17-18. In submissions JCTVC-D273 and JCTVC-D274, Panasonic stated that it "may have IPR relating to the technology described in this contribution." Yes despite participating in the standard-setting

---

[20] *See* https://web.archive.org/web/20190313193120fw_/http://phenix.int-evry.fr/jct/doc_end_user/current_meeting.php?id_meeting=154&search_id_group=1&search_su b_group=1 referring to "JCTVC-K0184" as "AHG9: On dependent slices syntax."

[21] *See* https://web.archive.org/web/20190815105642fw_/http://phenix.int-evry.fr/jct/doc_end_user/current_meeting.php?id_meeting=143&search_id_group=1&search_su b_group=1 referring to "JCTVC-D273" as "Modified derivation process of temporal motion vector predictor" and "JCTVC-D274" as "Modified usage of predicted motion vectors in forward directional bi-predictive coding frame."

process to promote and attempt to have its patent-covered technology incorporated into the HEVC standard, Panasonic never identified or disclosed the EP'463 patent, the '105 patent, or their family members to the ITU-T or the JCTVC. In 2015, Panasonic submitted to the ITU-T a "Patent Statement and Licensing Declaration" in which it agreed to license all of its HEVC SEPs on FRAND terms, *see* Ex. 16, but never disclosed the '105 patent, or their family members including the EP'463 patent that SPT has asserted in the UPC. Each of the '105 patent, and EP'463 patent names Toshiyasu Sugio and Takahiro Nishi, the same representatives who proposed Panasonic's motion vector functionality for inclusion into the HEVC standard, as inventors.

112.    Upon information and belief, the prior owners of Dolby's and SPT's HEVC SEPs at issue in this case withheld their patents to induce the JCT-VC/ITU members to attempt to incorporate technology they believed was covered by their patents into the HEVC Standard—but without providing those members with the ability to consider those alleged patent rights before the HEVC Standard was frozen around 2013. If Dolby, or the prior owners of Dolby's and SPT's HEVC SEPs had satisfied their contractual obligations and timely disclosed their rights in the Patents-in-Suit, the JCT-VC/ITU may have been able to adopt alternative technologies or decline to include the relevant functionality in the final standard. By failing to disclose their rights in the Patents-in-Suit before the HEVC Standard was frozen, the prior owners of Dolby's and SPT's HEVC SEPs deprived members of the JCT-VC/ITU of the ability to consider those options and has harmed Roku and others who have since implemented the HEVC Standard.

113.    Members of the ITU and other third-party beneficiaries of obligations of Dolby and the prior owners of Dolby's and SPT's HEVC SEPs under the ITU Patent Policy reasonably expected the prior owners of Dolby's and SPT's HEVC SEPs to disclose their known patents and patent applications at the outset of the standardization process, not after functionality allegedly

covered by a patent or patent application was approved for incorporation into the HEVC Standard and/or after the HEVC Standard was frozen. If the prior owners of Dolby's and SPT's HEVC SEPs held or had applied for patents potentially essential to the HEVC Standard, then under the binding contractual rules of the ITU Patent Policy, those prior owners of Dolby's and SPT's HEVC SEPs were obligated to disclose those patents from the outset, and at least before the HEVC Standard was frozen.

114. The prior owners of Dolby's and SPT's HEVC SEPs did not submit Patent Statement and Licensing Declarations to the ITU specifically identifying any of the Patents-in-Suit (or the applications for those patents) as allegedly essential to the HEVC Standard before that standard was frozen, even though the prior owners of Dolby's and SPT's HEVC SEPs knew they possessed those patent rights during development of the HEVC Standard.

115. Under the ITU Patent Policy, Dolby and the prior owners of Dolby's and HEVC SEPs had binding contractual commitments with the ITU, with ITU members, and with other SSOs participating in the HEVC Standard development, all for the benefit of the SSOs, their members, and any entity involved in making, using, selling, offering for sale, and/or importing products that support the HEVC Standard, including Roku. Upon information and belief, all these entities reasonably relied on the ITU's rules, including the ITU Patent Policy, in creating and supplying products that support the HEVC Standard.

116. Roku has invested significant time and resources in connection with supplying products in reliance on the transparency of the ITU's standard-setting process and the requirement that participants in the HEVC Standard-setting process comply with the ITU's rules, including the ITU Patent Policy requirement that members timely disclose during development of the HEVC Standard any patent rights that might be essential.

36

117.     Accordingly, an actual and justiciable controversy exists between Roku and Dolby concerning whether the claims of the '240 patent or the '888 patent are enforceable, and between Roku and SPT concerning whether the claims of the '105 patent or the '494 patent are enforceable. Roku now seeks a declaratory judgment that by their own actions and those of their predecessors-in-interest, Dolby and SPT have breached their disclosure obligations under the ITU Patent Policy, and as such, the claims of the '240 patent, the '888 patent, the '105 patent and the '494 patent are unenforceable against all products that implement or support that HEVC Standard. *See Qualcomm Inc. v. Broadcom Corp.*, 548 F.3d 1004, 1024-26 (Fed. Cir. 2008).

## CAUSES OF ACTION

### COUNT I – DECLARATORY JUDGMENT OF NON-INFRINGEMENT OF THE '105 PATENT
### (SPT)

118.     Roku realleges and incorporates by reference the allegations set forth in the foregoing paragraphs.

119.     Roku is not infringing and has not infringed, directly or indirectly, literally or under the doctrine of equivalents, willfully or otherwise, any claim of the '105 patent.

120.     As a result of the acts described in the preceding paragraphs, there exists a controversy of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

121.     The '105 patent has 2 independent claims. Independent claim 2 recites:

An image decoding apparatus of decoding a current picture per block with prediction

using one or both of a first reference picture list and a second reference picture list, the

image decoding apparatus comprising:

a processor; and

a non-transitory memory storing thereon a program, which when executed by the

processor, causes the processor to:

judge whether or not a second current reference picture for the current block is identical to a second adjacent reference picture for an adjacent block adjacent to the current block, the second current reference picture being (i) included in the second reference picture list and (ii) referred to by a second current motion vector, and the second adjacent reference picture being (i) included in a second adjacent reference picture list and (ii) referred to by a second adjacent motion vector;

when the second current reference picture is judged to be identical to the second adjacent reference picture, add the second adjacent motion vector to a candidate list for the second current motion vector;

only when the second current reference picture is judged to not be identical to the second adjacent reference picture, (A) judge whether or not the second current reference picture is identical to a first adjacent reference picture for the adjacent block, the first adjacent reference picture being (i) included in a first adjacent reference picture list and (ii) referred to by the first adjacent motion vector, and (B) when the second current reference picture is judged to be identical to the first adjacent reference picture, add the first adjacent motion vector to the candidate list for the second current motion vector;

select a predicted motion vector to be used for decoding the second current motion vector from the candidate list for second current motion vector; and

decode the second current motion vector using the selected predicted motion vector, wherein when the second current reference picture is judged to not be identical to the first adjacent reference picture, the first adjacent motion vector is not added to the candidate list for the second current motion vector.

122.    None of the Roku HEVC Products includes every claimed feature of independent claim 2 in the '105 patent. For example, the Roku HEVC Products do not include, among other things, the claimed "second current reference picture being (i) included in the second reference picture list," "the first adjacent reference picture being (i) included in a first adjacent reference picture list," "judge whether or not a second current reference picture for the current block is identical to a second adjacent reference picture for an adjacent block adjacent to the current block," or "only when the second current reference picture is judged to not be identical to the second adjacent reference picture, (A) judge whether or not the second current reference picture is identical to a first adjacent reference picture for the adjacent block."

123.    For at least these reasons, Roku has not infringed and does not infringe any claim of the '105 patent.

124.    A judicial declaration is necessary and appropriate so that Roku may ascertain its rights regarding the '105 patent.

## COUNT II - DECLARATORY JUDGMENT OF NON-INFRINGEMENT OF THE '494 PATENT
### (SPT)

125.    Roku realleges and incorporates by reference the allegations set forth in the foregoing paragraphs.

126.    Roku is not infringing and has not infringed, directly or indirectly, literally or under the doctrine of equivalents, willfully or otherwise, any claim of the '494 patent.

127.    As a result of the acts described in the preceding paragraphs, there exists a controversy of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

128.    The '494 patent has 2 independent claims. Independent claim 2 recites:

An image decoding apparatus which performs decoding processing by partitioning a picture into a plurality of slices, the image decoding apparatus comprising

39

a decoder which extracts, from a coded bitstream, a dependent slice enabling flag indicating whether or not the picture includes a dependent slice on which the decoding processing is performed depending on a result of the decoding processing on a slice different from a current slice, a slice address indicating a starting position of the current slice, and a dependency indication indicating whether or not the current slice is the dependent slice,

wherein the dependent slice enabling flag is disposed in a parameter set common to the slices,

the slice address is disposed in a slice header of the current slice, and

the dependency indication is disposed in the slice header, and is disposed before the slice address and after a syntax element identifying the parameter set.

129.    None of the Roku HEVC Products includes every claimed feature of independent claim 1 in the '494 patent. The Roku HEVC Products do not include, among other things, to the extent limiting, "[a]n image decoding apparatus which performs decoding processing by partitioning a picture into a plurality of slices," or the claimed "a dependent slice enabling flag," "indicating whether or not the picture includes a dependent slice," or "a dependency indication indicating whether or not the current slice is the dependent slice."

130.    For at least these reasons, Roku has not infringed and does not infringe any claim of the '494 patent.

131.    A judicial declaration is necessary and appropriate so that Roku may ascertain its rights regarding the '494 patent.

## COUNT III - DECLARATORY JUDGMENT OF NON-INFRINGEMENT
## OF THE '240 PATENT
## (DIAB)

132.    Roku realleges and incorporates by reference the allegations set forth in the foregoing paragraphs.

133.    Roku is not infringing and has not infringed, directly or indirectly, literally or under the doctrine of equivalents, willfully or otherwise, any claim of the '240 patent.

134.    As a result of the acts described in the preceding paragraphs, there exists a controversy of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

The '240 patent has one independent claim. Independent claim 1 recites:

A non-transitory computer-readable medium for storing data representing a sign-data-hiding enabled block of an image, comprising:

a bitstream written in the non-transitory computer-readable medium, the bitstream comprising a set of context-based adaptive binary arithmetic coding (CABAC) encoded coefficients to be decoded by a decoder to generate a set of coefficients representing a residual block for the sign-data-hiding enabled block, the set of coefficients including a particular non-zero coefficient that is without a sign designation,

wherein remainder data, based on an operation representing a division between a sum of non-zero coefficients in the set of coefficients and a specific number, is used to designate a sign for the particular non-zero coefficient.

135.    None of the Roku HEVC Products includes every claimed feature of independent claim 1 in the '240 patent. The Roku HEVC Products do not include, among other things, the claimed "bitstream comprising a set of context-based adaptive binary arithmetic coding (CABAC) encoded coefficients to be decoded by a decoder to generate a set of coefficients representing a residual block for the sign-data-hiding enabled block, the set of coefficients including a particular

41

non-zero coefficient that is without a sign designation, wherein remainder data, based on an operation representing a division between a sum of non-zero coefficients in the set of coefficients and a specific number, is used to designate a sign for the particular non-zero coefficient."

136. For at least these reasons, Roku has not infringed and does not infringe any claim of the '240 patent.

137. A judicial declaration is necessary and appropriate so that Roku may ascertain its rights regarding the '240 patent.

### COUNT IV - DECLARATORY JUDGMENT OF NON-INFRINGEMENT OF THE '888 PATENT (DIAB)

138. Roku realleges and incorporates by reference the allegations set forth in the foregoing paragraphs.

139. Roku is not infringing and has not infringed, directly or indirectly, literally or under the doctrine of equivalents, willfully or otherwise, any claim of the '888 patent.

140. As a result of the acts described in the preceding paragraphs, there exists a controversy of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

141. The '888 patent has 3 independent claims. Independent claim 9 recites:

A decoder for decoding a sign-data-hiding enabled partition of an image, comprising:

one or more processors; and

a non-transitory computer-readable medium coupled to the one or more processors

having instructions stored thereon which, when executed by the one or more processors,

cause the one or more processors to perform operations comprising:

receiving a set of context-based adaptive binary arithmetic coding (CABAC) encoded

coefficients from an encoder;

decoding the set of CABAC encoded coefficients to generate a set of coefficients

42

representing a residual block for the sign-data-hiding enabled partition, the set of coefficients including a first non-zero coefficient that is without a sign designation;

applying a function to the set of coefficients to generate sign data, wherein applying the function to the set of coefficients comprises:

computing a sum of non-zero coefficients in the set of coefficients; andcomputing remainder data based on a division between the sum and a specific number; and

designating a sign for the first non-zero coefficient based on the sign data, wherein designating the sign for the first non-zero coefficient comprises:

designating the sign for each one of the non-zero coefficients that are without sign designations based on the remainder data.

142. None of the Roku HEVC Products includes every claimed feature of independent claim 9 in the '888 patent. The Roku HEVC Products do not include, among other things, the claimed "decoding the set of CABAC encoded coefficients to generate a set of coefficients representing a residual block for the sign-data-hiding enabled partition, the set of coefficients including a first non-zero coefficient that is without a sign designation" or the claimed "designating a sign for the first non-zero coefficient based on the sign data, wherein designating the sign for the first non-zero coefficient comprises: designating the sign for each one of the non-zero coefficients that are without sign designations based on the remainder data."

143. For at least these reasons, Roku has not infringed and does not infringe any claim of the '888 patent.

144. A judicial declaration is necessary and appropriate so that Roku may ascertain its rights regarding the '888 patent.

## COUNT V – BREACH OF CONTRACT – FRAND
### (Dolby and SPT)

145.    Roku realleges and incorporates by reference the allegations set forth in the foregoing paragraphs.

146.    Dolby and SPT, or the prior owners of Dolby's and SPT's respective HEVC SEPs, entered into express or implied contractual commitments to the ITU-T relating to the licensing of SEPs in the HEVC Standard.  These contractual commitments are valid and enforceable and binding upon Dolby and SPT.

147.    Dolby and SPT are contractually obligated to offer licenses to their HEVC SEPs consistent with the licensing commitments and patent policy of the ITU-T.  Accordingly, Dolby and SPT, or the prior owners of Dolby's and SPT's respective HEVC SEPs, promised to license their SEPs to all implementers of the HEVC Standard on FRAND terms, as confirmed through their written declarations to the ITU-T.

148.    As an implementer of the HEVC Standard, Roku is an intended third-party beneficiary of these contractual commitments and is entitled to enforce them.

149.    Accordingly, Dolby and SPT are contractually obligated to provide Roku with a license to their HEVC SEPs on FRAND terms.

150.    Dolby and SPT each breached, and continue to breach their contractual obligations by, among other things, refusing to offer Roku licenses to their HEVC SEPs under FRAND terms, either directly or through their agent Access Advance.

151.    As mentioned above, and as stated on the website of Access Advance, its licensors (including Dolby and SPT) "have [an] obligation, upon request by an implementer, to offer bilateral licenses on reasonable terms, and to negotiate in good faith with the implementer."

Consequently, they are not allowed to exclusively refer licensees to pool licensing, neither explicitly nor implicitly (*e.g.* by demanding excessive bilateral royalties).

152.    As a direct and necessary result of these contractual breaches, Roku has suffered and continues to suffer damages in an amount to be proven at trial.

## COUNT VI – BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING
### (Dolby and SPT)

153.    Roku realleges and incorporates by reference the allegations set forth in the foregoing paragraphs.

154.    At all times relevant to this action, Dolby and SPT have owed a duty of good faith and fair dealing to Roku under the FRAND commitments to the ITU-T relating to the licensing of SEPs in the HEVC Standard.

155.    Through the conduct described herein, including the refusal to offer FRAND terms and conditions to Roku for HEVC SEP licensing, Dolby and SPT have breached the duty of good faith and fair dealing owed to Roku.

156.    As a direct and necessary result of the breach of the implied covenant of good faith and fair dealing, Roku has suffered and continues to suffer damages in an amount to be proven at trial.

## COUNT VII – PROMISSORY ESTOPPEL
### (Access Advance)

157.    Roku realleges and incorporates by reference the allegations set forth in the foregoing paragraphs.

158.    Access Advance's licensor members, including Dolby and SPT, or the prior owners of Dolby's and SPT's respective HEVC SEPs, made clear and definite promises to the ITU-T to offer and grant a license to HEVC SEPs to all third parties who implement the HEVC Standard.

Likewise, as the licensing agent and pool administrator for its licensor members' FRAND-encumbered HEVC SEPs, Access Advance is obligated to and has promised to provide FRAND rates on behalf of its licensor members.

159.    Roku has reasonably relied on Access Advance's public statements (e.g., marketing materials on its website) and commitments to implementers of the HEVC Standard to license patents in the HEVC Advance pool on FRAND terms.

160.    Roku has been injured by Access Advance's refusal to offer a FRAND-compliant license to Roku. For example, in reliance on Access Advance's promises to offer FRAND licenses to the HEVC Advance pool, and to its detriment, Roku has expended resources negotiating with Access Advance for a license to the HEVC Advance pool, and has expended substantial resources █████████████████████████████████████, when upon information and belief, Access Advance and Dolby have coordinated such that █████████████████████████████████████████ █████████████████████████████████. Moreover, in reliance on Access Advance's representations and promises that it would offer FRAND-compliant licenses for its HEVC Advance pool, Roku invested in research and development, manufacturing, and marketing of its streaming products, some of which implement the HEVC Standard. Roku, a willing licensee, expected to be able to develop and market standard-compliant products without being subject to duplicative, discriminatory, and excessive royalties for HEVC SEPs.

161.    Access Advance should be estopped under the doctrine of promissory estoppel from reneging on its promises—on which Roku relied—to implementers of the HEVC Standard and the public at large.

## COUNT VIII – UNFAIR AND DECEPTIVE ACTS
## IN VIOLATION OF MASS. GEN. LAWS CH. 93A, § 11
## (All Defendants)

162.    Roku realleges and incorporates by reference the allegations set forth in the foregoing paragraphs.

163.    At all times relevant to this action, Defendants are "persons" that have engaged in "trade or commerce" within Massachusetts and within the meaning of Mass. Gen. Laws. Ch. 93A.

164.    Defendants, by their conduct described above, willfully and knowingly engaged in unfair and deceptive acts or practices in violation of Mass. Gen. Laws ch. 93A, § 11.

165.    Defendants deceived Roku by advertising through Access Advance that they would grant a license to Roku for the HEVC Advance pool and their respective patents within that pool on FRAND terms, but instead they have demanded a royalty rate that is inconsistent with their FRAND obligations.

166.    Although Roku engaged in good faith and remained a willing licensee for years, Dolby has coordinated with Access Advance and SPT in an effort to coerce Roku to pay excessive royalty rates for patents in Access Advance's HEVC Advance pool.

167.    Such unfair and deceptive acts and practices occurred primarily and substantially within the Commonwealth of Massachusetts.

168.    Defendant's unfair and deceptive acts and practices were a foreseeable cause of injury to Roku.

169.    As a direct and proximate result of Defendants' unfair and deceptive conduct, Roku has suffered and continues to suffer substantial injury. Roku is entitled to treble damages and reasonable attorneys' fees, costs, and interest in an amount to be determined at trial.

## COUNT IX – DECLARATORY JUDGMENT OF FRAND OBLIGATIONS
### (All Defendants)

170.     Roku realleges and incorporates by reference the allegations set forth in the foregoing paragraphs.

171.     An actual, continuing, and justiciable controversy exists between Roku and Defendants as to Roku's right to a license of the HEVC SEPs on FRAND terms. Absent a declaration of Roku's rights to such licenses on FRAND terms, Dolby and SPT will continue their refusal to offer the HEVC SEPs to Roku on FRAND terms through bilateral agreements or the HEVC Advance pool, which will continue to cause Roku injury and damage. This dispute is of sufficient immediacy and reality to warrant issuance of a declaratory judgment.

172.     Accordingly, Roku is entitled to a judicial determination and declaration with respect to the following:

     a.     A declaration that Dolby has not offered Roku a license to Dolby's HEVC SEPs on FRAND terms and conditions;

     b.     A declaration that Roku is entitled to a bilateral license from Dolby on FRAND terms;

     c.     A declaration of the FRAND terms and conditions for Roku to license Dolby's HEVC SEPs, specifically including a determination of the royalty rate to be paid by Roku, including the discount Roku is to receive on royalty rates and fees due to its pre-existing licenses to Dolby's HEVC SEPs;

     d.     A declaration that SPT has not offered Roku a license to Dolby's HEVC SEPs on FRAND terms and conditions;

     e.     A declaration that Roku is entitled to a bilateral license from SPT on FRAND terms;

f.     A declaration of the FRAND terms and conditions for Roku to license SPT's HEVC SEPs, specifically including a determination of the royalty rate to be paid by Roku.

g.     A declaration that Access Advance has not offered Roku a license to the HEVC Advance pool (including the HEVC SEPs owned by Dolby and SPT) on FRAND terms and conditions; and

h.     A declaration of the FRAND terms and conditions for Roku to license any patents in the HEVC Advance pool that Roku does not already have a license to, specifically including a determination of the royalty rate to be paid by Roku, including the discount Roku is to receive on royalty rates and fees due to its pre-existing licenses. To the extent necessary, Roku is willing to pay for an interim license pending the resolution of its request for a declaration of the FRAND terms and rates for a license to the HEVC Advance patent pool, Dolby's patent portfolio, and SPT's patent portfolio.

### COUNT X – DECLARATION OF UNENFORCEABILITY AND BREACH OF DISCLOSURE DUTY
### (Dolby and SPT)

173.    Roku realleges and incorporates by reference the allegations set forth in the foregoing paragraphs.

174.    Upon information and belief, in violation of their obligations to ITU, its members, and implementers (including Roku), Dolby, SPT, and the prior owners of Dolby's and SPT's HEVC SEPs failed to timely disclose the Patents-in-Suit in accordance with the requirements of the ITU Patent Policy. Since at least the filing of the patent applications leading to the Patents-in-Suit, the ITU Patent Policy required that "any ITU-T member organization putting forward a standardization proposal should, from the outset, draw the attention of the [Telecommunication Standardization Bureau (TSB)] to any known patent or to any known pending patent application,

either their own or of other organizations." And under the standards of the ITU-T and the JVT, this meant that participants in the HEVC Standard-setting process were required to timely disclose patents that reasonably might be necessary to practice those standards. The prior owners of Dolby's and SPT's HEVC SEPs were bound by the ITU Patent Policy during their participation in the HEVC Standardization.

175. Orange SA, the prior owner of Dolby's '240 and '888 patents, never disclosed the '240 patent, the '888 patent, or their family members to the ITU, despite participating in the standard-setting process. Dolby never disclosed the '240 patent, the '888 patent, or their family members after obtaining an interest in such patents either.

176. Panasonic, the prior owner of SPT's '105 and '494 patents, never disclosed the '105 patent, the '494 patent, or their family members to the ITU, despite participating in the standard-setting process.

177. Dolby, SPT, and the prior owners of Dolby's and SPT's HEVC SEPs also benefitted unjustly from this late disclosure. For example, Dolby and SPT now claim that each of the Patents-in-Suit is essential to practice the HEVC Standard, even though the prior owners of Dolby's and SPT's respective HEVC SEPs deprived ITU members of the ability to consider non-patented alternatives or to eliminate the functionality from the standard that Dolby and SPT now claim are covered by the Patents-in-Suit, such that the accused functionality would not have been included in the HEVC Standard but for the lack of timely disclosure. Dolby and/or SPT also have unjustly benefited from this late disclosure by demanding and obtaining licensing revenue based on the allegedly standards-essential nature of the Patents-in-Suit, by claiming enhanced value to investors and others through an inflated sense of its patent portfolio (which

includes the Patents-in-Suit), and by relying on the allegedly standard-essential nature of the Patents-in-Suit to accuse Roku of infringing the Patents-in-Suit.

178. As the assignees of the Patents-in-Suit, Dolby and SPT are successors-in-interest to Orange SA and Panasonic's obligations as participants in the development of HEVC Standard and to Orange SA and Panasonic's rights and obligations arising under the ITU Patent Policy with respect to the Patents-in-Suit.

179. The misconduct by prior owners of Dolby's and SPT's HEVC SEPs in failing to timely disclose the Patents-in-Suit while the accused technologies were being adopted into the HEVC Standard constitutes at least a waiver of their rights—and thus Dolby and SPT's rights as successors-in-interest—to enforce any claimed-essential patents against any entity practicing the HEVC Standard, rendering the patents unenforceable against such standards. *See Qualcomm Inc. v. Broadcom Corp.*, 548 F.3d 1004, 1024-26 (2008).

## CONDITIONS PRECEDENT

180. All conditions precedent (if any) to Roku's right to seek relief have been satisfied or waived.

## PRAYER FOR RELIEF

WHEREFORE, Roku prays for the following relief:

    a.    The Court enter judgment in favor of Roku and against Defendants;

    b.    The Court enter a declaratory judgment in favor of Roku that Roku is not infringing and has not infringed any claim of each of the Patents-in-Suit;

    c.    Preliminarily and permanently enjoin SPT and DIAB, its officers, agents, servants, employees, and attorneys, and those persons in active concert or participation with it who receive actual notice by personal service or otherwise, from asserting or threatening to assert

against Roku or its customers, potential customers, or users of any Roku products, any charge of infringement of any claims of the Patents-in-Suit;

      d.    The Court declare that Dolby and SPT are liable for breach of contract for failing to comply with their FRAND obligations to the ITU-T and Roku;

      e.    Enjoin Dolby and SPT, their respective officers, agents, servants, employees, and attorneys, and those persons in active concert or participation with them who receive actual notice by personal service or otherwise, from demanding excessive royalties from Roku, that are not consistent with Dolby's and SPT's FRAND obligations to the relevant SSOs, including the ITU.

      f.    Enjoin Dolby and SPT, their respective officers, agents, servants, employees, and attorneys, and those persons in active concert or participation with them who receive actual notice by personal service or otherwise, from enforcing injunctive relief against Roku obtained in the Unified Patent Court proceedings during the pendency of the proceedings before this Court;

      g.    Enjoin Dolby and SPT, their respective officers, agents, servants, employees, and attorneys, and those persons in active concert or participation with them who receive actual notice by personal service or otherwise, from seeking or enforcing injunctive relief against Roku based on their respective worldwide HEVC SEPs for the pendency of these proceedings;

      h.    The Court declare the FRAND terms for interim licenses for the global HEVC SEPs at issue in this dispute, to the extent such interim licenses are necessary to facilitate the issuance of the relief requested herein;

i. The Court declare that Dolby and SPT breached their duty of good faith and fair dealing for refusing to offer FRAND-compliant terms and conditions for their HEVC SEPs;

j. The Court declare that Access Advance is estopped from refusing to offer FRAND-compliant licenses for their or their members' HEVC SEPs;

k. The Court declare that Defendants violated Massachusetts General Laws Chapter 93A;

l. The Court declare that Dolby has not offered Roku a license to Dolby's HEVC SEPs on FRAND terms and conditions;

m. The Court declare that Roku is entitled to a bilateral license from Dolby on FRAND terms;

n. The Court declare the FRAND terms and conditions for Roku to license Dolby's HEVC SEPs, specifically including a determination of the royalty rate to be paid by Roku, including the discount Roku is to receive on royalty rates and fees due to its pre-existing licenses to Dolby's HEVC SEPs;

o. The Court declare that SPT has not offered Roku a license to Dolby's HEVC SEPs on FRAND terms and conditions;

p. The Court declare that Roku is entitled to a bilateral license from SPT on FRAND terms;

q. The Court declare the FRAND terms and conditions for Roku to license SPT's HEVC SEPs, specifically including a determination of the royalty rate to be paid by Roku.

r. The Court declare that Access Advance has not offered Roku a license to the HEVC Advance pool (including the HEVC SEPs owned by Dolby and SPT) on FRAND terms and conditions; and

s.     The Court declare the FRAND terms and conditions for Roku to license any remaining patents in the HEVC Advance pool to which Roku does not already have a license, specifically including a determination of the royalty rate to be paid by Roku, including the discount Roku is to receive on royalty rates and fees due to its pre-existing licenses. To the extent necessary, Roku is willing to pay for an interim license pending the resolution of its request for a declaration of the FRAND terms and rates for a license to the HEVC Advance patent pool, Dolby's patent portfolio, and SPT's patent portfolio.

t.     The Court declare that each of the Patents-in-Suit is unenforceable against anyone practicing the HEVC Standard or otherwise making, using, selling, offering for sale, or importing products supporting the HEVC Standard.

u.     Enjoin enforcement of the Patents-in-Suit against anyone practicing the HEVC Standard or making, using, selling, offering for sale, or importing products supporting the HEVC Standard.

v.     The Court award Roku the amount of damages it proves at trial;

w.     The Court award Roku treble damages for damages it proves at trial for Defendants' violations of Massachusetts General Laws Ch. 93A;

x.     The Court declare this case "exceptional" under 35 U.S.C. § 285;

y.     The Court award Roku its costs and attorneys' fees;

z.     The Court award taxable costs;

aa.     The Court award pre-judgment and post-judgment interest as provided by law; and

bb.     The Court award Roku other and further relief as this Court deems just and proper.

December 31, 2024

**ROPES & GRAY LLP**

By:

William Davison
Mass. Bar No. 682390
Amanda L. Pine
Mass Bar No. 707611
800 Boylston St.
Boston, MA 02199-3600
Telephone: (617) 951-7000
William.Davison@ropesgray.com
Amanda.Pine@ropesgray.com

Matthew J. Rizzolo (*pro hac vice forthcoming*)
N.Y. Bar No. 4661344
2099 Pennsylvania Ave NW
Washington, DC 20006
Telephone: (202) 508-4600
Matthew.Rizzolo@ropesgray.com

**ATTORNEYS FOR PLAINTIFF ROKU, INC.**